**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Bobby L. Taylor, | : | Case No. 3:07CV00082 |
| Plaintiff, | : | |
| vs. | : | **MAGISTRATE'S REPORT AND RECOMMENDATION** |
| Commissioner of Social Security Administration, | : | |
| Defendant. | : | |

Plaintiff seeks judicial review of a final decision of the Commissioner denying his application for Supplemental Social Security Income (SSI) under Title XVI of the Social Security Act (the Act), 42 U. S. C. § §§ 1381, *et seq*. and 405(g). Pending is Plaintiff's Motion for Remand or Reversal with Brief (Docket No. 15) to which Defendant filed a Brief on the merits (Docket No. 18). For the reasons set forth below, the Magistrate recommends that the decision of the Commissioner be affirmed, the complaint be dismissed and the referral to the Magistrate be terminated.

**PROCEDURAL BACKGROUND**

Plaintiff filed applications for SSI on May 31, 2002 and January 7, 2003 (Tr. 57-58; 61-62). Both applications were denied initially and upon reconsideration (Tr. 37-40; 41-45, 34). On March 8, 2005, Administrative Law Judge (ALJ) Fred McGrath conducted a hearing at which Plaintiff, his counsel and Vocational Expert (VE) Edwin Yates appeared (Tr. 251-269). The ALJ issued an unfavorable decision

on November 23, 2005 (Tr. 20-28). The Appeals Council denied Plaintiff's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner (Tr. 4-6). Plaintiff filed a timely request for judicial review.

## JURISDICTION

This Court exercises jurisdiction over the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). *McClanahan v. Commissioner of Social Security,* 474 F.3d 830, 832 -833 (6th Cir. 2006).

## FACTUAL BACKGROUND

At the time of the hearing Plaintiff was 38 years of age. He completed "about the ninth grade" and acquired no further formal education or training (Tr. 255, 256).

Plaintiff was employed as a plumber's assistant, fence erector and folder. For a year and a half, Plaintiff carried plumbers' tools and obtained the tools that the plumbers needed to complete a task (Tr. 256). His co-workers transported him to and from work; however, he was discharged after an argument with his boss (Tr. 257). As a fence erector, Plaintiff poured concrete to anchor the poles (Tr. 258). In contemplation of a major retail sales event, Plaintiff was employed at J. C. Penney for three days to fold clothing (Tr. 263).

Plaintiff was prescribed Oxycontin to treat the pain in his cervical back and spine that radiated to his left hand (Tr. 259, 260). The pain in his hand caused him to lose his grip. Periodically he had a muscle spasm in his left hand (Tr. 260). He also experienced spasms and numbness in his thumb, forefinger and middle finger (Tr. 261). The pain caused insomnia (Tr. 264).

Plaintiff admitted that he would probably have difficulty completing a purchase since he was unable to count change. Using his food stamp card accommodated his inability to count (Tr. 262).

Plaintiff estimated that he visited his brother every six months (Tr. 262).  He did not cook.  Throughout the day, Plaintiff watched television and rested (Tr. 261, 263).

The VE opined that an individual that was limited to medium work, simple, routine and repetitive tasks and occasional conversations, could perform work as a bay worker, a landscape specialist, hospital cleaner.  As described in the *Dictionary of Occupational Titles (DICOT)*, there were approximately 650 bay worker positions, 5,200 positions as a landscape specialist and 2,500 hospital cleaner positions in the Northwest Ohio economy that Plaintiff could perform (Tr. 266).

The same individual limited to light work could perform jobs such as outside deliverers, advertising material distributor and machine feeders.  There were 1,100, 2,000 and 1,500, respectively, such positions in the local economy.

An individual limited to sedentary work, could perform the positions of hand mounter, weight tester and getterer[1].  There were 400, 120, and 370, respectively, positions known in the local economy (Tr. 267).  The VE opined that the specific vocation preparation time[2] (SVP) for all of these jobs, as defined in *DICOT,* did not include any time beyond a short demonstration up to and including one month.

## MEDICAL EVIDENCE

Plaintiff was approaching his twelfth birthday when the Wechsler Intelligence Scale for Children test was administered on February 17, 1978.  The results showed that had an intelligence quotient of 86,

---

[1]  A getterer applies getter (chemical solution) to stems of lead wires used in making incandescent lamps:  Picks stem from tray and applies getter on lead wires, using brush. Places stem in tray to dry. Adds thinners to getter and stirs mixture to maintain specified consistency.  DICOT 725.687-022 (Thomson/West 2007).

[2]  Specific Vocational Preparation is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. There are nine levels of specific vocational preparation.  A level two designation requires a short demonstration up to and including 1 month for a specific job-worker situation.

3

his performance intelligence quotient was 93 and his verbal intelligence quotient was 81[3]. His reading comprehension score was at the second grade level and he performed arithmetic on a third grade level (Tr. 143). Plaintiff's language pattern was immature and his eyesight was questionable (Tr. 144).

Since age 15 or 16, Plaintiff suffered from neck and back pain. He was relieved of pain with the use of a heating pad or by lying down (Tr. 165). The manual muscle examination revealed that he could raise his shoulders, elbows, wrists, fingers, hips, knees and feet against maximal resistance (Tr. 166). The range of motion in his cervical spine, shoulders, elbows, wrists, hands/fingers and dorsolumbar spine, hips, knees and ankles was normal (Tr. 167-169). Dr. Rekha R. Tivedi's examination also revealed sensory impairment in left upper and lower extremities. Plaintiff gave a history of depression (Tr. 170). X-rays of Plaintiff's cervical and lumbar spine were administered on July 16, 2002. The cervical spine showed evidence of mild to moderate bony impingement upon the left neural foreman and the lumbar spine showed minimal anterior bony spurring in the upper lumbar spine (Tr. 171). An x-ray of Plaintiff's left hand was normal (Tr. 172).

On August 13, 2002, Dr. James C. Tanley, Ph. D., administered the Wechsler Adult Intelligence Scale (WAIS), Wechsler Memory Scale and the Woodcock-Johnson Passage Comprehension tests (Tr. 173). At age 35, Plaintiff's verbal intelligence quotient was 62, his performance intelligence quotient was 74 and his full scale intelligence quotient was 64. Overall, Plaintiff's scores placed him in the mild

---

[3] After the conclusion of the hearing, Plaintiff presented new evidence. Layne Psychological Services administered the WAIS-III scale on February 7, 2006. Plaintiff's verbal IQ was 60, his performance IQ was 62 and his full scale IQ was 57 (Docket No. 15, Exhibit A).

range of mental retardation. He was also diagnosed with a learning disorder and borderline intelligence (Tr. 175). Dr. Tanley ascribed a global assessment of functioning (GAF) of $50^4$ to Plaintiff (Tr. 176).

On August 16, 2002, Dr. Myung J. Cho opined that Plaintiff could occasionally lift fifty pounds, frequently lift twenty-five pounds, stand and/or walk about six hours in an eight-hour workday, alternate between sitting and standing to relieve pain and push and pull on an unlimited basis and frequently climb, balance, stoop, kneel, crouch and crawl (Tr. 179, 180). Otherwise there were no manipulative, visual, communicative or environmental limitations (Tr. 181-182).

Dr. Michael Wagner, Ph.D., confirmed the presence of a learning disorder and borderline intellectual functioning (Tr. 187, 190). While Plaintiff was moderately restricted in his ability to engage in the functions of daily living, he was only mildly restricted in his ability to maintain social functioning, concentration, persistence or pace. He had no functional limitations caused by repeated episodes of decompensation (Tr. 196). Plaintiff had marked limitations in his ability to understand and remember detailed instructions as well as carry out those instructions (Tr. 200).

.       Dr. Jerome Zake found that Plaintiff was preoccupied with back pain. Consequently, his functioning level and symptoms were very seriously impaired; his ability to understand and follow directions and relate to others was poor; and he was capable of maintaining attention to simple repetitive

---

[4] GAF measures social, occupational and psychological functioning. A score of 50 suggests serious symptoms OR any serious impairment in social, occupational, or school functioning. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, GLOBAL ASSESSMENT OF FUNCTIONING SCALE, 4th ed., *Text Revision* (2000).

tasks and withstanding the stress and pressures associated with day-to-day work activities (Tr. 208). Dr. Zake ascribed a GAF of 40[5] to Plaintiff on February 28, 2003 (Tr. 209).

Dr. Donald W. Ormiston, Ph.D. opined on April 19, 2003 that Plaintiff suffered from a disturbance of mood characterized by sleep disturbance, decreased energy and thoughts of suicide; a dysthymic disorder; borderline intellectual functioning; antisocial personality disorder and alcohol abuse (Tr. 213-214, 217-218). In Dr. Ormiston's opinion, Plaintiff was only mildly restricted in his ability to engage in the activities of daily living and he was moderately limited in his ability to maintain social functioning or maintain concentration, persistence and pace (Tr. 220). There were no marked limitations in Plaintiff's ability to understand and remember instructions, sustain concentration and persistence, maintain socially appropriate behavior, respond to changes in the work setting, set realistic goals or make plans independently of others (Tr. 224, 225).

On April 23, 2003, Dr. E. S. Villanueva concurred with Dr. Cho that Plaintiff could occasionally lift fifty pounds, frequently lift twenty-five pounds, stand and/or walk about six hours in an eight-hour workday, push and pull on an unlimited basis and frequently climb, balance, stoop, kneel, crouch and crawl (Tr. 230, 231). However, Dr. Villanueva found that Plaintiff could sit about six hours in an eight-hour workday (Tr. 230). He, too, opined that Plaintiff had no manipulative, visual, communicative and environmental limitations (Tr. 231-232).

Dr. J. Rod Coffman, Ph. D., diagnosed Plaintiff with a dysthymic disorder, borderline intellectual functioning, an antisocial personality disorder and a substance addiction disorder (Tr. 234, 237, 238). Dr. Coffman found that Plaintiff had no significant limitations in his ability to understand and remember

---

[5] A score of 40 implies that there is some impairment in reality testing or communication (ex: speech is sometimes illogical, obscure, irrelevant) OR major impairment in several areas such as work or school, family relations, judgment, thinking, or mood (ex: depressed man avoids friends, neglects family, and is unable to work).

simple instructions or take precautions in response to normal hazards (Tr. 247-248).  Plaintiff had mild restrictions in activities of daily living, moderate limitations in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace (Tr. 244).  He had no marked limitations in understanding and memory, sustained concentration and persistence, maintaining socially appropriate behavior and the ability to adapt to his work and personal environment (Tr. 247, 248).

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the ALJ's findings are conclusive so long as they are supported by substantial evidence.  *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).  The court's review is limited to determining whether there is substantial evidence in the record to support the findings.  *Id.* (*citing Duncan v. Secretary of Health & Human Services*, 801 F.2d 847, 851 (6th Cir.1986)).  Substantial evidence means 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (*citing Kirk v. Secretary of Health & Human Services*, 667 F.2d 524, 535 (6th Cir.1981) *cert. denied,* 103 S. Ct. 2428 (1983) (*quoting Richardson v. Perales*, 91 S. Ct. 1420, 1426 (1971)).  Furthermore, the court must defer to an agency's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Id.* (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  The court's role is not to resolve conflicting evidence in the record or to examine the credibility of the claimant's testimony.  *Id.* at 614-615 (*citing Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir.1987)).

## STANDARD OF DISABILITY

The Act requires the Commissioner to follow a "five-step sequential process" for claims of disability.  *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  During the first four steps, the claimant

has the burden of proof. *Walters v. Commissioner of Social Security,* 127 F.3d 525, 529 (6th Cir. 1997). This burden shifts to the Commissioner only at Step Five. *Id* (*citing Young v. Secretary of Health and Human Services*, 925 F.2d 146, 148 (6th Cir.1990); (*citing Allen v. Califano*, 613 F.2d 139, 145 (6th Cir.1980); *Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir.1987)).

At step one, the ALJ must consider work activity. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 241 -242 (6th Cir. 2007) (*citing* 20 C. F. R. § 416.920 (a)(4)(i) and 416.920(b)). If the claimant is doing substantial gainful activity, the ALJ must find that the claimant is not disabled. *Id.*

At step two, the ALJ must consider the medical severity of the claimant's impairment. *Id.* If there is no severe medically determinable impairment that meets the duration requirement or a combination of impairments that are severe and meets the duration requirements, the claimant is not disabled. *Id.* (*citing* 20 C. F. R. §§ 416.920(a)(4)(ii)) and 416.920©).

At step three, the ALJ must consider the medical severity of the claimant's impairment. 20 C. F. R. § 416.920 (a)(4) (iii) (Thomson/West 2007). If the claimant has an impairment that meets or equals one of the listings in appendix 1 of subpart P of part 404 of this chapter and meets the duration requirement, a finding of disability will result. 20 C. F. R. § 416.920(a)(4)(iii) (Thomson/West 2007).

At the fourth step, the ALJ will consider an assessment of the claimant's residual functional capacity and past relevant work. 20 C. F.R. § 416.920(a)(4) (iv) (Thomson/West 2007). If the claimant can still do his or her past relevant work, the ALJ will find that the claimant is not disabled. 20 C. F. R. § 416.920 (a)(4) (iv) (Thomson/West 2007).

At the fifth and last step, the ALJ will consider the assessment of the claimant's residual functional capacity, age, education, and work experience to determine if the claimant can make an adjustment to other work. 20 C. F. R. § 416.920 (a)(4) (v) (Thomson/West 2007). If the claimant can

make an adjustment to other work, there will be a finding that the claimant is not disabled; if the claimant cannot make an adjustment to other work, there will be a finding that the claimant is disabled. 20 C. F. R. § 416.920 (a)(4)(v) (Thomson/West 2007).

## ALJ DETERMINATIONS

After consideration of the entire record, the ALJ made the following findings:

1. Plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability.

2. Plaintiff's borderline intellectual functioning, dysthymic disorder, antisocial personality, low back pain, and left-hand pain were collectively severe. They did not, however, meet or medically equal on of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.

3. Plaintiff's allegations regarding his limitations were not totally credible.

4. Plaintiff had the residual functional capacity to perform a significant range of medium work except that he was limited to performing simple, repetitive routine work tasks, having only occasional contact with the general public; and engaging in occasional conversations and interpersonal interaction.

5. Plaintiff was unable to perform his past relevant work.

6. Plaintiff, a younger individual with limited education, had no transferrable skills from any past relevant work. Transferability of his skills was not at issue in the case.

7. Although Plaintiff's exertional limitations did not allow him to perform the full range of medium work, under the Medical-Vocational Rules 203.25, 202.17 & 201.24 as a framework, there were a significant number of jobs that Plaintiff could perform, specifically, day worker, landscape specialist, hospital cleaner, outside deliverer, advertising material distributor, machine feeder, hand mounter, weight tester and getterer.

       8.       Plaintiff was not under a disability as defined by the Act through the date of decision, November 23, 2005.

(Tr. 26-28).

## DISCUSSION

Plaintiff asserts that the application of 12.05C of the Listing to his impairment directs a finding of disability. He seeks reversal of the Commissioner's final decision denying benefits. In the alternative, Plaintiff presents new evidence that his IQ is now scored within the range designated as "mildly retarded." Defendant contends that Plaintiff's medical opinions lack evidence of significant deficits in adaptive functioning. Defendant argues that Plaintiff failed to establish good cause why he could not produce the test score before the issuance of the decision. The request for remand lacks merit.

I.

The ALJ found that Plaintiff's full-scale IQ is inconsistent with his functional abilities. Plaintiff contends that his learning disability imposes a significant work-related limitation. In summary, he is disabled consistent with 12.05C of the Listing.

Under section 12.05 of the listing, mental retardation refers to significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period. *Bilka v. Commissioner of Social Security,* 252 F. Supp.2d 472, 474 (N.D. Ohio 2002). Section C provides that mental retardation sufficient to meet the listing exists if the claimant demonstrates a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function or demonstrates the onset of impairment before age 22. *Id.* (*citing* 20 C. F. R. Part 404, Subpart P, Appendix 1, Section

12.05C). An assessment of functional limitations that the additional impairment imposes to determine if it significantly limits the physical or mental ability to do basic work activities is required. 20 C. F. R. Pt. 404, Subpt. P, App. 1, Section 12.00A (Thomson/West 2007). Functional limitations are assessed based on activities in daily living, social functioning, concentration, persistence or pace and episodes of decompensation. 20 C. F. R. Pt. 404, Subpt. P, 12.00C (Thomson/West 2007).

The Magistrate finds that substantial evidence supports the ALJ's finding that Plaintiff's impairments did not meet the Listing. Prior to age 22, Plaintiff's IQ was outside the range required to constitute an impairment during the developmental period. His lowest score of 81 exceeded the required range of 60 to 70. The WAIS-IQ test administered when he was 35 years of age produced a full scale IQ of 62 (Tr. 175). Neither score is indicative that Plaintiff manifested a mental disability during his developmental period or prior to age 22. Clearly, there is a lack of medical determinable evidence from which the ALJ could find that Plaintiff meets the definition of 12.05C.

II.

Plaintiff claims that the test conducted by Layne Psychological Services after the conclusion of the hearing, was performed for submission with a new application for benefits. It is material because it validates Plaintiff's prior IQ testing. The Magistrate construes Plaintiff's request for consideration of new evidence as a request for a sentence six remand under 42 U. S. C. § 405(g).

The statute is quite explicit as to the standards that must be met before a district court orders a sentence six remand for the taking of additional evidence. *Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 -484 (6th Cir. 2006). Specifically, it must be shown (i) that the evidence at issue is both "new" and "material," and (ii) that there is "good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.* (*citing* 42 U.S.C. § 405(g); *see also*

11

*Cline v. Commissioner of Social Security,* 96 F.3d 146, 148 (6th Cir. 1996)). Evidence is considered "new" only if it was not in existence or available to the claimant at the time of the administrative proceeding. *Id.* (internal quotation marks and citation omitted). Such evidence is deemed "material" if "there is a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Id*. The party seeking a remand bears the burden of showing that these two requirements are met. *Id.* (*citing Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001)).

In this case, the evidence attached to Plaintiff's brief is new as it was not in existence or available to Plaintiff at the time of the administrative proceeding. However, such evidence is not material. Plaintiff failed to demonstrate that the WAIS-III test administered on February 7, 2006 at age 39, supports the onset of a mental impairment during his development period or before age 22. Submission of the results of the WAIS-III does not satisfy the two statutory prerequisites for a remand to consider new evidence.

### III.

For these reasons, the Magistrate recommends that the decision of the Commissioner be affirmed, the complaint be dismissed and the referral to the Magistrate be terminated.

/s/Vernelis K. Armstrong  
Vernelis K. Armstrong  
United States Magistrate Judge

Date: December 11, 2007

### NOTICE

12

Please take notice that as of this date the Magistrate's Report and Recommendation attached hereto has been filed.

Please be advised that, pursuant to Rule 72.3(b) of the Local Rules for this district, the parties have ten (10) days after being served in which to file objections to said Report and Recommendation. A party desiring to respond to an objection must do so within ten (10) days after the objection has been served.

Please be further advised that the Sixth Circuit Court of Appeals, in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) held that failure to file a timely objection to a Magistrate's Report and Recommendation foreclosed appeal to the Court of Appeals. In *Thomas v. Arn*, 106 S.Ct. 466 (1985), the Supreme Court upheld that authority of the Court of Appeals to condition the right of appeal on the filing of timely objections to a Report and Recommendation.